# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| THE EDGAR ASSOCIATION, | |
| *Declaratory Judgment Plaintiff,* | |
| v. | Case No. 1:23-cv-04985-VMC |
| HAMMOND SOFTWARE, INC. and NICOLAS HAMMOND, | **JURY TRIAL DEMANDED** |
| *Declaratory Judgment Defendants* | |
| HAMMOND SOFTWARE, INC., | Case No. 1:23-cv-04985-VMC |
| *Counterclaim Plaintiff* | **JURY TRIAL DEMANDED** |
| v. | |
| THE EDGAR ASSOCIATION, THE AMERICAN CONTRACT BRIDGE LEAGUE, INC., BRIAN PLATNICK, FRANCO BASEGGIO, and A.J. STEPHANI, | |
| *Counterclaim Defendants* | |

**PLAINTIFF/COUNTERCLAIM DEFENDANT
THE EDGAR ASSOCIATION'S BRIEF IN SUPPORT
OF ITS MOTION TO DISMISS HAMMOND'S INFRINGEMENT
CLAIMS OF U.S. PATENT NO. 11,439,912 AND MOTION FOR
JUDGMENT ON THE PLEADINGS ON U.S. PATENT NO. 11,014,005
<u>FOR LACK OF PATENT ELIGIBILITY UNDER 35 U.S.C. § 101</u>**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................1

II.     PROCEDURAL HISTORY AND STATEMENT OF FACTS .....................2

        A.      Procedural History...................................................................................2

        B.      The Asserted Patents Are Directed to the Idea of Detecting
                Cheating in Bridge Using Statistical Analysis ....................................3

III.    LEGAL BACKGROUND AND STANDARDS ...........................................8

        A.      The Rule 12 Standard ..............................................................................8

        B.      The Legal Question of Whether Patents Are Directed to
                Ineligible Subject Matter .......................................................................9

IV.     ARGUMENT...........................................................................................................10

        A.      The Case Should Be Disposed of Because the Hammond Patents
                Are Directed to Ineligible Subject Matter, Rendering Them
                Invalid as a Matter of Law ...................................................................10

                1.      *Alice* Step One:  The Claims of the Hammond Patents Are
                        All Directed to the Same Abstract Idea of Detecting
                        Cheating in Bridge Using a Mathematical Analysis.................10

                        (a)     The Focus of the Claimed Advance of the Hammond
                                Patents Over the Prior Art Is Using Statistical
                                Analysis to Detect Cheating ...........................................10

                2.      *Alice* Step Two: The Claims Do Not Recite an Inventive
                        Concept, Only the Use of Generic Computer Hardware ..........15

        B.      The Fact That the Patent Examiner Allowed the '912 Patent Claims
                Over an Initial § 101 Rejection Does Not Bind This Court...............17

V.      CONCLUSION.........................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Affinity Labs of Tex. v. DIRECTV, LLC*,
    838 F.3d. 1253 (Fed. Cir. 2016) ........................................................................9

*AI Visualize, Inc. v. Nuance Communications, Inc.*,
    No. 2022-2109, 2024 WL 1449081 (Fed. Cir. Apr. 4, 2024) ..............................8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ..................................................................................*passim*

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
    991 F.3d 1245 (Fed. Cir. 2021) ......................................................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................8

*BSG Tech. LLC v. BuySeasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ......................................................................16

*Caselas, LLC v. VeriFone, Inc.*,
    624 F. Supp. 3d 1328 (N.D. Ga. 2022) ............................................................18

*Charge-Point, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ........................................................................11

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017) ........................................................................8

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. 2020) ......................................................................17

*DDR Holdings LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ......................................................................14

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
    958 F.3d 1178 (Fed. Cir. 2020) ......................................................................16

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ......................................................................17

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ..........................................................................14

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ..........................................................................18

*Hawthorne v. Mac Adjustment, Inc.*,
    140 F.3d 1367 (11th Cir. 1998) ............................................................................8

*Intell. Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ......................................................................9, 10

*In re Marco Guldenaar Holding B.V.*,
    911 F.3d 1157 (Fed. Cir. 2018) ..........................................................................12

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ..........................................................................14

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ..........................................................................17

*PersonalWeb Technologies LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) .............................................................................14

*Roma Outdoor Creations, Inc v. City of Cumming, Ga.*,
    558 F. Supp. 2d 1283 (N.D. Ga. 2008) .................................................................8

*SAP America, Inc. v. InvestPic, LLC.*,
    *898 F.3d 1161 (Fed Cir. 2018)* ............................................................13, 15, 17

*Secured Mail Solutions LLC v. Universal Wilde*,
    873 F.3d 905 (Fed. Cir. 2017) ............................................................................14

*In re Smith*,
    815 F.3d 816 (Fed. Cir. 2016) ............................................................................12

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020) ..........................................................................11

*In re TLI Commc'ns LLC Pat. Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ............................................................................13

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ...........................................................8, 13, 14, 17

**Statutes**

Patent Act, 35 U.S.C. § 101 ...............................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 12 ................................................................................................2, 8

## I.     INTRODUCTION

EDGAR respectfully moves this Court to dismiss, with prejudice, Hammond's infringement counterclaim on U.S. Patent No. 11,439,912, and for judgment on the pleadings on EDGAR's claim for declaratory judgment of invalidity as to U.S. Patent No. 11,014,005 (together, the "Hammond Patents"), as both patents fail to claim patentable subject matter as required by the Patent Act, 35 U.S.C. § 101. As set forth below, the two Hammond Patents are virtually identical, and they are directed to the abstract idea of identifying cheaters in the card game of bridge— something players and game administrators have done for decades, long before the advent of computers, and certainly well before Hammond applied for its patents. The asserted patents claim a method for "detecting cheating players in a card game" using statistics, comprising the steps of acquiring bridge game board data, determining player performance values based on that data, detecting a deviation by comparing the performance values against those of known cheaters and non-cheaters, and alerting an administrator when a deviation is detected.  The system refers to generic computer systems that are capable of performing these abstract mental steps—exactly the type of generic claims that the Federal Circuit has repeatedly found to be abstract ideas.

Nothing in the claims of the Hammond Patents recite something that would remove them from the abstract to a specific technological improvement.  Whereas

patents found to pass § 101 muster claimed specific improvements to computerized technology, often involving specialized computer hardware or software, the Hammond Patents are implemented on generic hardware. As such, the Hammond Patents fail to claim patentable subject matter and should be found invalid as a matter of law under 35 U.S.C. § 101.

## II.    PROCEDURAL HISTORY AND STATEMENT OF FACTS

### A.    Procedural History

EDGAR filed its complaint on October 30, 2023, requesting a judicial declaration of non-infringement and invalidity of the Hammond Patents. Dkt. No. 1. On February 9, 2024, Hammond filed its answer, including a counterclaim of infringement of at least claims 1, 10 and 17 of the '912 patent only, and naming the American Contract Bridge League, Inc. (the "ACBL"), and Brian Platnick, Franco Baseggio, and A.J. Stephani ("the Individuals") as counterclaim-defendants. Dkt. 25, ¶ 38. The ACBL and the Individuals have yet to file their answers. EDGAR now moves to dismiss Hammond's counterclaims of the '912 patent for failure to state a claim under Fed. R. Civ. P. 12(b)(6) on the ground that the '912 patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101. Similarly, with respect to EDGAR's declaratory judgment action, EDGAR moves for judgment on the pleadings under Fed. R. Civ. P. 12(c) on the ground that both the '912 patent and

the '005 patent are likewise directed to patent-ineligible subject matter under 35 U.S.C. § 101.

### B.   The Asserted Patents Are Directed to the Idea of Detecting Cheating in Bridge Using Statistical Analysis

The Hammond Patents are directed to the abstract idea of detecting cheating in the game of bridge using statistical analysis.  *See* '912 patent, Abstract, 1:34-39; '005 patent Abstract, 1:31-36.  Bridge is a "partnership, partial knowledge, trick taking card game," using a standard, 52-card deck.  '912 patent, 1:20-21; '005 patent, 1:17-18.  Partners use their bids to exchange information about their hands, including overall strength and distribution of the suits, but no other means of conveying or implying information is permitted.  Any "transfer of illegal information is known as collusive cheating," and "both parties in a partnership participate."  '912 patent, 1:21-25; '005 patent, 1:18-22.  As explained in the specifications, cheating in bridge was a known problem, as exemplified by the unearthing of "major scandals" of collusive cheating between pairs between 2013-2015, where cheating was identified via "video evidence and decoding . . . illegal signals."  '912 patent, 1:25-29; '005 patent, 1:22-26.  The Hammond Patents claim that, because these methods of cheating were discovered, it would "cause pairs that wish to cheat to use non-video-detectable methods" like varying signals in a pre-arranged, but unknown to a decoder, manner.  '912 patent, 1:29-32; '005 patent, 1:26-29.

Thus, the purported improvement over the prior art of the Hammond Patents is to detect cheating without video evidence ***through the use of statistical analysis***. '912 patent, 1:32-36; '005 patent, 1:29-36.   The Hammond Patents "show[] the statistical analysis of a pair achieving results within statistical norms.   In other words, deviation from those statistical norms are highly indicative of cheating and the level of likelihood of this occurring can be deduced by statistical methods."   *Id.* The Hammond Patents concede that the statistical methods they apply were "well-known."   '912 patent, 1:34-39, 11:41-48; '005 patent, 1:31-36, 11:40-47.

Figure 1, which is the same for both patents, depicts "an example method for detecting cheating in bridge":



FIG. 1

*See* '912 patent, 6:1-2, Fig. 1; '005 patent, 5:63-64, Fig. 1.

4

The claims of the '912 patent, which are virtually identical to the claims of the '005 patent, recite the basic steps depicted in Figure 1: acquiring data; determining performance values for players based on that data; detecting a deviation in performance by comparing it against data of known cheaters; and alerting a user of the deviation—i.e., potential cheating.  *Id.*  As the specification details, this analysis is performed by utilizing various generic hardware and software: "the server," "web pages," "the crawler," and "the processing tool." '912 patent, 6:1-7:8; '005 patent, 5:63-7:4.

Claim 10 of the '912 patent, which is representative of all independent claims of the Hammond Patents,[1] is reproduced below:

> 10.    A method for detecting cheating players in a card game, comprising:
>
> ***acquiring, by a processor board data for multiple events, the events including bridge games***, wherein the board data corresponds to boards in the bridge games, and wherein the board data includes hand records, a table result, contract, and declarer from the respective bridge game;
>
> for multiple of the boards in each event, ***determining performance values for a player*** of the respective board ***based on the board data***;

---

[1] The independent claims of the Hammond Patents are virtually identical, with the '005 patent adding only "timing information" as a performance value to the "determining" limitation: "determining performance values for a player of the respective board based on the board data; ***and timing information, wherein the timing information conveys how long the player took to make a call or play a card during the event[.]*** " '005 patent, 21:21-26, 22:15-20, 22:66-23:4 (emphasis added).

>*detecting, by the processor, a deviation by comparing the performance values from a first event against a threshold*, wherein the threshold is based on at least one of past performance of known cheating players and optimal bridge behavior, wherein the optimal bridge behavior is based on performance values for non-cheating players from the multiple events; and

>*alerting an administrative user for the first event regarding a likelihood of cheating when the deviation is detected*, wherein the alert includes automatically sending an electronic message to the administrative user.

'912 patent, 22:4-31 (emphasis added); *see also* '005 patent, 22:8-31. The additional independent claims, claims 1 and 17 of each of the Hammond Patents, recite the same method on a "non-transitory computer-readable medium containing instructions" executed by a "processor." '912 patent, 21:10-35, 22:52-23:7, 23:8-20; '005 patent, 21:11-39, 22:56-23:15, 23:16-28.

The remainder of the claims are dependent claims (which are notably not asserted by Hammond in its counterclaims of infringement of the '912 patent) that further define the idea of detecting cheating in bridge using statistical analysis as recited in the independent claims, and are implemented on a "non-transitory computer-readable medium" for the system-related claims:

| Limitation | '912 Dependent Claims | '005 Dependent Claims |
|---|---|---|
| "wherein acquiring the board data includes crawling a website that displays bridge tournament results, and wherein names acquired from the crawling are normalized." | 2, 18 | 2, 18 |

| | | |
|---|---|---|
| "the stages further comprising determining a skill level rating for the player based on a contract and comparison of that contract to a most possible number of tricks taken, wherein the threshold is based on the skill level rating." | 3, 11, 19 | 3, 11, 19 |
| "the stages further comprising determining a skill level rating for each player based at least in part on whether a card played by each player took more, the same, or fewer tricks than a predicted number based on all cards for all of the players at the beginning of a board in the event." | 4, 12 | 4, 12 |
| "wherein detecting the deviation includes comparing declarer ratings and records for two players with partnership defensive rating and records for those two players." | 5, 13, 20 | 5, 13, 20 |
| "wherein detecting the deviation includes comparing against a threshold for improper partnership agreements." | 6, 14 | 6, 14 |
| "wherein the performance values are determined for a partnership that includes the player." | 7, 15 | 7, 15 |
| "the stages further comprising detecting metal deterioration based on a change in double dummy ratio ("DDR") values for the player, indicating a loss in playing ability." | 8, 16 | 8, 16 |
| "detecting mental deterioration based on a change in double dummy calculations based on played cards for the player, indicating a loss in playing ability; and detecting cheating based on a sudden value increase based on in double dummy calculations for played cards by the player, indicating a loss in playing ability." | 9 | 9 |

'912 patent, 21:8-23:20; '005 patent, 21:8:23:28.

## III.   LEGAL BACKGROUND AND STANDARDS

### A.   The Rule 12 Standard

In order to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must provide well-pleaded facts which, if viewed as true, state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The legal standard for a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is the same as the standard for a motion to dismiss under Rule 12(b)(6).  *Roma Outdoor Creations, Inc v. City of Cumming, Ga.*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Patent-eligibility under 35 U.S.C. § 101 "may be resolved on a Rule 12(b)(6) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."  *AI Visualize, Inc. v. Nuance Communications, Inc.*, No. 2022-2109, 2024 WL 1449081, at *4 (Fed. Cir. Apr. 4, 2024) (quotation marks omitted).  The Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced."  *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) (quotation marks omitted); *see Cleveland Clinic Found. v. True Health Diagnostics LLC,* 859 F.3d 1352, 1360 (Fed.

Cir. 2017) (citing cases where the Federal Circuit affirmed § 101 rejections at the motion to dismiss stage).

**B.    The Legal Question of Whether Patents Are Directed to Ineligible Subject Matter**

Section 101 of the Patent Act defines patent-eligible subject matter.  35 U.S.C. § 101.  "In interpreting this statutory provision, the Supreme Court has held that its broad language is subject to an implicit exception for 'laws of nature, natural phenomena, and abstract ideas,' which are not patentable."  *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017)).

At step one of the two-step test for determining whether a patent is directed to ineligible subject matter under Section 101, the Court must decide whether the claims are "directed to" an abstract idea.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014).  If the claim's "'character as a whole' is directed to excluded subject matter"—an abstract idea—the Court proceeds to step two.  *Affinity Labs of Tex. v. DIRECTV, LLC*, 838 F.3d. 1253, 1257 (Fed. Cir. 2016).  In step two, the Court must "look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed."  *Affinity Labs of Tex.*, 838 F.3d. at 1258.  The Court must decide whether the elements of the claim, taken "both individually and 'as an ordered combination,'" provide an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than

9

a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18. Any "additional features" in the claim related to the inventive concept "must be more than 'well-understood, routine, conventional activity.'" *Erie*, 850 F.3d at 1328 (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 79 (2012)).

## IV.   ARGUMENT

### A.   The Case Should Be Disposed of Because the Hammond Patents Are Directed to Ineligible Subject Matter, Rendering Them Invalid as a Matter of Law

Hammond's complaint should be dismissed because none of the claims of the Hammond Patents are directed to patent-eligible subject matter. The asserted claims are directed to the abstract idea of detecting cheating in bridge using statistical analysis—a paradigmatic example of the type of method of organizing human activity that the Federal Circuit has routinely found unpatentable. As the claims do not recite anything that transforms the abstract idea into a patentable application of the idea, the claims are invalid under § 101.

#### 1.   *Alice* Step One:  The Claims of the Hammond Patents Are All Directed to the Same Abstract Idea of Detecting Cheating in Bridge Using a Mathematical Analysis

At their core, the claims of the Hammond Patents are directed to nothing more than the abstract idea of using statistics to detect cheating in a card game.

##### (a)   The Focus of the Claimed Advance of the Hammond Patents Over the Prior Art Is Using Statistical Analysis to Detect Cheating

The Federal Circuit has instructed that the step one inquiry asks "what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (internal quotation marks and citations omitted). "[W]hile the specification may help illuminate the true focus of a claim, when analyzing patent eligibility, reliance on the specification must always yield to the claim language in identifying that focus." *Charge-Point, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).

Here, the claims are directed to the abstract idea of detecting cheating in bridge by comparing current performance data to benchmark data using statistical analysis. In representative claim 10, the method steps are: "(1) "acquiring, by a processor board data" for "bridge games"; (2) "determining performance values for a player . . . based on the board data"; (3) "detecting, by the processor, a deviation by comparing the performance values from a first event against a threshold," wherein the "threshold" is based in part on "past performance" and "optimal bridge behavior"; and (4) "alerting an administrative user" of the cheating. '912 patent at 22:6-26; '005 patent at 22:10-31. In other words, the method determines performance, compares that performance to benchmark data, and if there is a notable difference, it brands the bridge players as cheaters. The specification confirms that "statistical methods" to detect cheating using comparisons to prior performance is the only asserted advance. '912 patent, 1:32-39 ("[T]his patent shows how detection

can be done without video evidence . . . [and] shows the statistical likelihood of a pair achieving results within statistical norms . . . are highly indicative of cheating and the level of likelihood of this occurring can be deduced by statistical methods."); '005 patent, 1:29-36.

This is a paradigmatic abstract idea. Fundamentally, the Federal Circuit has held that patents related to rules and methods of card and dice games are directed to abstract ideas. In *In re Smith*, 815 F.3d 816 (Fed. Cir. 2016), the Federal Circuit invalidated claims covering "rules for playing a wagering game and use conventional steps of shuffling and dealing a standard deck of cards." *Id.* at 817. The court concluded that the claimed wagering game was "effectively, a method of exchanging and resolving financial obligations based on probabilities created during the distribution of the cards," which was impermissibly abstract. *Id.* at 818-19 (quotation marks omitted). Likewise, in *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157 (Fed. Cir. 2018), the Federal Circuit invalidated claims directed to a method of playing a dice game, finding that it was a mere "method of organizing human activity" rather than a technological improvement. *Id.* at 1160-61.

More generally, the Federal Circuit has consistently held that claims just like those in the Hammond Patents, directed at collecting data and analyzing that data using statistical methods, are directed to abstract ideas. *See, e.g.*, *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250 (Fed. Cir. 2021)

(finding claims related to computerized statistical methods for determining haplotype phase in genetic data directed to patent ineligible abstract ideas). Indeed, the claims at issue here are similar to claims found by the Federal Circuit to be invalid under § 101 in *SAP America, Inc. v. InvestPic, LLC.*, 898 F.3d 1161, 1167 (Fed Cir. 2018). There, the Federal Circuit affirmed the district court's finding that the claim was directed to the abstract idea of "selecting certain information, analyzing it using [statistical] techniques, and reporting or displaying the results of the analysis." *Id.* Moreover, like here, the purported invention recited no specific hardware and was not directed to any improvements in carrying out the way computers carry out their basic functions. *Id.* at 1168. Here, as in *SAP*, because the purported invention of the Hammond Patents claims only the idea of conducting statistical analysis on a set of information to report a result, it too is directed to an abstract idea.

Although the claims recite computer components such as a "processor," those limitations do not save the claims from abstractness. As the Federal Circuit has repeatedly held, claims cannot overcome a § 101 defense merely by reciting generic computer components or steps that use computers. *See, e.g.*, *Trinity*, 72 F.4th at 1364 ("generic computing terms" like "'data processing system,' 'processors,' 'memory'" do not render a claim non-abstract when they merely "provide a generic technical environment for performing the abstract idea"); *In re TLI Commc'ns LLC*

*Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (a "server" that "is described simply in terms of performing generic computer functions such as storing, receiving, and extracting data" does not render a claim non-abstract).  Instead, the abstract-idea analysis turns on "whether the claims focus on the specific asserted improvement in computer capabilities or, instead, on a process that qualifies as an abstract idea for which computers are invoked merely as a tool."  *Trinity*, 72 F.4th at 1362-63.  The fact that a computer merely makes an abstract idea go *faster* does not make a claim patent-eligible; instead, a patent is valid under § 101 only if it is an improvement *to computers*.  *See, e.g.*, *PersonalWeb Technologies LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) (asserted "efficiency benefits" do "not necessarily render an abstract idea less abstract") (quotation marks and citation omitted); *Secured Mail Solutions LLC v. Universal Wilde*, 873 F.3d 905, 910 (Fed. Cir. 2017) (same).  Here, there is no improvement to computer technology; the patents merely describe a purportedly better way of detecting bridge cheaters by using existing computer technology.   The claimed inventions do not "override[] the routine and conventional" operation of a computer (*DDR Holdings LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258 (Fed. Cir. 2014)), involve "a specific improvement to the way computers operate" (*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)), or allow computers to perform functions not before possible (*see McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016)).  Even if

14

computers can handle the statistical calculations more quickly than the human brain, the claims are still abstract under Supreme Court and Federal Circuit precedent.

The dependent claims are directed to the same abstract idea. For example, claim 2 of the Hammond Patents adds "wherein acquiring the board data includes crawling a website that displays bridge tournament results, and wherein names acquired from the crawling are normalized." '912 patent, 21:36-39; '005 patent, 21:40-43. Collecting information from a generic "website" is a classic data-collection step that the Federal Circuit has characterized as abstract. *SAP Am.*, 898 F.3d at 1168 ("[E]ven if a process of collecting and analyzing information is limited to . . . a particular [site], that limitation does not make the collection and analysis other than abstract.") (internal citation omitted). The remaining dependent claims provide additional specifics about the data comparisons done as part of the statistical analysis, as well as purport to identify potential mental deterioration based on the results of the statistical analysis. '912 patent, 21:8-23:20; '005 patent, 21:8-23:28. None of these claims recite any patentable technological improvements.

## 2. *Alice* Step Two: The Claims Do Not Recite an Inventive Concept, Only the Use of Generic Computer Hardware

The asserted claims also fail *Alice* step two because they recite only the use of generic computer hardware, which does not amount to an inventive concept.

As the Supreme Court has explained, an "inventive concept" is "an element or combination of elements that is 'sufficient to ensure that the patent in practice

amounts to significantly more than a patent upon the ineligible concept itself.'" *Alice*, 573 U.S. at 217-18.  A patent that claims the use of an abstract idea in a "well-understood, routine, [and] conventional" environment does not have an inventive concept.  *Id.* at 225.  The addition of generic, functionally-described computer hardware does not render an abstract idea patent-eligible: "if a patent's recitation of a computer amounts to a mere instruction to implement an abstract idea on a computer, . . . that addition cannot impart patent eligibility."  *Id.* at 224 (internal quotation and citation omitted).  The claims recite nothing more than generic compute components, a "non-transitory, computer-readable medium containing instructions" with a "processor that executes the instructions."  *See, e.g.*, '912 patent, 22:52-23:20; '005 patent, 22:57-23:15.  And other than generic references to a "website," the dependent claims do not provide any elements beyond the abstract idea itself that would transform the elements into "significantly more" than the idea alone.  *See BSG Tech. LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289-90 (Fed. Cir. 2018).

Moreover, simply because Hammond claims that the patents recite "a technical solution necessarily rooted in computer technology" does not make it so.  *See* Dkt. 25, ¶ 20.  *See also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183 (Fed. Cir. 2020) (factual argument raised in a "conclusory fashion" insufficient to overcome § 101 determination at motion to

dismiss stage).  The fact that Hammond alleges the statistical analysis "cannot be performed as mental steps by a human, nor by a human using pen and paper" because of the "number and complexity" of the data is of no consequence, because courts have long held claiming this sort of fundamental mathematical analysis on a computer—regardless of the level of complication of the math—cannot recite an inventive concept.  *See e.g.*, *SAP*, 898 F.3d at 1167; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (finding analyzing information by mathematical algorithms not eligible).   Likewise, any "improved speed [to the mathematical analysis] inherent with applying the abstract idea using a computer" is insufficient to establish inventiveness at *Alice* step 2.  *Trinity*, 72 F.4th at 1366; *accord Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [is] insufficient to render the claims patent eligible as an improvement to computer functionality." (citation omitted) (cleaned up)); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) ("[R]elying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible.").

### B.    The Fact That the Patent Examiner Allowed the '912 Patent Claims Over an Initial § 101 Rejection Does Not Bind This Court

Hammond states that any eligibility arguments made by EDGAR would be cumulative with those considered by the USPTO in allowing the claims.  *See* Dkt.

25, ¶ 26.  However, that the '912 patent claims were allowed by the Patent Examiner over an initial § 101 rejection has no bearing on the Court's ineligibility analysis. As this Court recently confirmed in finding similar patents invalid, "the Court is not bound by [the PTO's] guidance" on § 101 during prosecution.  *Caselas, LLC v. VeriFone, Inc.*, 624 F. Supp. 3d 1328, 1342 (N.D. Ga. 2022) (citing *Clevland Clinic Found. v. True Health Diagnostics LLC,* 760 F. App'x 1013, 1020 (Fed. Cir. 2019)). And even if the Court were to consider the applicant's arguments used to overcome the rejection, they would reveal that the applicant's assertions to the USPTO—that the "alerting" step was novel—should not have been credited because "alerting an administrator" to the results of data processing had already been deemed abstract by the Federal Circuit.  *FairWarning IP, LLC v. Iatric Systems, Inc*., 839 F.3d 1089, 1093-97 (Fed. Cir. 2016) (finding abstract claims directed at collecting and analyzing information to detect misuse and notifying a user when a misuse is detected).

## V.    CONCLUSION

Accordingly, EDGAR respectfully requests that the Court dismiss Hammond's counterclaims on the '912 patent with prejudice and adjudicate on the pleadings the invalidity of the Hammond Patents, as both patents fail to claim patentable subject matter as required by the Patent Act 35 U.S.C. § 101.

Dated: April 15, 2024                    Respectfully submitted,


                                         */s/   Noah C. Graubart*
                                         Noah C. Graubart
                                         Katherine H. Reardon (*Pro Hac*)
                                         **FISH & RICHARDSON P.C.**
                                         1180 Peachtree Street NE, 21st Floor
                                         Atlanta, GA 30309
                                         Tel: (404) 892-5005
                                         Fax: (404) 892-5002

                                         Louis Fogel (*Pro Hac*)
                                         fogel@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         60th South 6th Street Suite 3200
                                         Minneapolis, MN 55402
                                         (612) 335-5070

                                         Shaun M. Van Horn (*Pro Hac*)
                                         Vanhorn@fr.com
                                         **FISH & RICHARDSON P.C.**
                                         60th South 6th Street Suite 3200
                                         Minneapolis, MN 55402
                                         (612) 335-5070

                                         **ATTORNEYS FOR PLAINTIFF**
                                         **THE EDGAR ASSOCIATION**

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

/s/   Noah C. Graubart
Noah C. Graubart

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I have electronically filed the foregoing I have this day caused to be served the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all attorneys of record.

Date:  April 15, 2024                    /s/   Noah C. Graubart
Noah C. Graubart