# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| THE EDGAR ASSOCIATION,<br><br>*Plaintiff,*<br><br>v.<br><br>HAMMOND SOFTWARE, INC.<br>and NICOLAS HAMMOND,<br><br>*Defendants.* | Case No. 1:23-cv-04985-VMC<br><br>**JURY TRIAL DEMANDED** |
| HAMMOND SOFTWARE, INC.,<br><br>*Counterclaim-Plaintiff*<br><br>v.<br><br>THE EDGAR ASSOCIATION, THE<br>AMERICAN CONTRACT BRIDGE<br>LEAGUE, INC., BRIAN PLATNICK,<br>FRANCO BASEGGIO, and A.J.<br>STEPHANI,<br><br>*Counterclaim-Defendants.* | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS FOR LACK OF PATENT ELIGIBILITY UNDER 35 U.S.C. § 101

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................1

II.  THE HAMMOND PATENTS ARE DIRECTED TO INELIGIBLE
     SUBJECT MATTER .................................................................................2

     A.   *Alice* Step 1:  The Crux of Hammond's Invention is an
          Abstract Idea....................................................................................2

     B.   *Alice* Step 2: The Claims of the Hammond Patents Do
          Not Recite
          Any Inventive Concept......................................................................8

III. PATENT INELIGIBILITY ANALYSIS FOCUSES ON THE
     CLAIMS AND CAN BE RESOLVED AT THE PLEADING
     STAGE.....................................................................................................13

IV.  CONCLUSION.........................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                                       **Page(s)**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   573 U.S. 208 (2014) ................................................................................*passim*

*Atlantio Works v. Brady,*
   107 U.S. 192 (1883) ................................................................................8

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
   687 F.3d 1266 (Fed. Cir. 2012) ..................................................11, 14

*Bilski v. Kappos,*
   561 U.S. 593 (2010) ..............................................................................8, 9

*BSG Tech LLC v. BuySeasons, Inc.,*
   899 F.3d 1281 (Fed. Cir. 2018) ..................................................9, 13

*CardioNet, LLC v. InfoBionic, Inc.*
   955 F.3d 1358 (Fed. Cir. 202) ..................................................6, 7

*Caselas, LLC v. Verifone, Inc.,*
   2024 U.S. App. LEXIS 12676 (Fed. Cir. May 28, 2024) ..............................9, 15

*Caselas, LLC v. VeriFone, Inc.,*
   624 F. Supp. 3d 1328 (N.D. Ga. 2022), *aff'd*, No. 2023-1036, 2024
   WL 2720092 (Fed. Cir. May 28, 2024) (Calvert, J.) ............................................3

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
   859 F.3d 1352 (Fed. Cir. 2017) ..........................................................14

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l*
   *Ass'n,*
   776 F.3d 1343 (Fed. Cir. 2014) ..........................................................3

*Data Engine Techs. LLC v. Google LLC,*
   906 F.3d 999 (Fed. Cir. 2018) ..........................................................8

*DDR Holdings, LLC v. Hotels.com, LP,*
   773 F.3d 1245 (Fed. Cir. 2014) ..................................................11

*Diamond v. Diehr*,
    450 U.S. 175 (1981)...................................................................................4, 5, 9

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ..............................................................*passim*

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ........................................................................4

*Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*,
    792 F.3d 1363 (Fed. Cir. 2015) ........................................................................8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*
    837 F.3d 1299 (Fed. Cir. 2016) ....................................................................6, 7

*Parker v. Flook*
    437 U.S. 584 (1978)...........................................................................................5

*PPS Data, LLC v. Jack Henry & Assocs., Inc.*,
    No. 2:18-cv-00007-JRG, 2019 WL 1317286 (E.D. Tex. Mar. 21,
    2019) ...................................................................................................................3

*Rapid Litigation Mgmt. Ltd. v. CellzDirect Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016) ................................................................12, 13

*In re Richman*,
    563 F.2d 1026 (1977)........................................................................................5

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
    65 F.4th 698 (Fed. Cir. 2023) ........................................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ...............................................................4, 5, 10

*Simio, LLC v. FlexSim Software Products, Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020) ......................................................................14

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) ........................................................................6

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ........................................................................1

**Statutes**

Patent Act, 35 U.S.C. § 101 ..............................................................................*passim*

**Other Authorities**

Rule 12(b)(6)...................................................................................................14

## I.    INTRODUCTION

Hammond's Response (Dkt. No 60) does nothing to save its claims from ineligibility under § 101.  Hammond's Response does not address EDGAR's core indictment: that the Hammond Patents simply claim the concept of analyzing data using statistics to detect a variance, i.e., potential cheating, and alert an administrator, all using generic computer components.  To the extent the Hammond Patents improve anything, that improvement is to the abstract idea.  The Federal Circuit has made clear that a "new" or "improved" abstract idea is still an abstract idea.  *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("a ***new*** abstract idea is still an abstract idea") (emphasis in original).

The Court need look no further than the Hammond Patents themselves to see the inventor's recognition of what was purportedly missing from the prior art, and that the claims capture an abstract solution to that purported problem, without limiting it to any inventive implementation of the idea.  The Hammond Patents admit: "[T]his ***patent shows how detection can be done*** without video evidence . . . [and] shows the statistical likelihood of a pair achieving results within statistical norms . . . are highly ***indicative of cheating*** and the level of likelihood of this occurring can be ***deduced by statistical methods***."  '912 patent at 1:29-36 (emphasis added); '005 patent at 1:29-36 (emphasis added).

1

Missing from the abstract idea recited in the claims is any inventive hardware or unconventional routine that is required to perform the claimed method. Hammond's Response does not point to anything in the Hammond Patents that offer the "something more" required to save them from ineligibility. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). Hammond is left only to claim that use of statistical analysis in the specific field of cheating detection in bridge is "inventive," which is nothing more than a restatement of the abstract idea limited to a particular field, and which the law denounces as supplying any "inventive concept" to save the claims from abstractness.

Hammond's Response otherwise raises no claim construction issue nor any legitimate issue of fact that would prevent this Court from deciding EDGAR's Motion now. EDGAR therefore respectfully requests that the Court grant its motion with prejudice.

## II.  THE HAMMOND PATENTS ARE DIRECTED TO INELIGIBLE SUBJECT MATTER

### A.  *Alice* Step 1:  The Crux of Hammond's Invention is an Abstract Idea

The focus of the claims of the Hammond Patents[1] is the abstract idea of detecting cheating using statistical analysis. Hammond does not dispute that

---

[1]Notably, Hammond does not dispute that claim 10 of the '912 patent is representative, nor does it dispute that any differences in the language of the claims

statistical analysis was well-known ('912 patent at 11:43-44 ("This field of mathematical probability and statistics is well understood."); *id,* at 12:29-31 ("Well known statistical methods can be applied to determine the statistical likelihood of a given event . . . ."); '005 patent at 11:42-43, 12:29-31 (same)); that cheating in bridge was known and monitored in the field ('912 patent at 1:25-32, 1:42-44, 1:58-60; '005 patent at 1:22-29, 1:39-41, 1:55-57); or that the claims recite generic computer components ('912 patent at 22:52-23:20; '005 patent at 22:57-23:15; *see also generally* Dkt. 60 at 22-24).

Hammond's only purported advance over the prior art is using statistical analysis of historical information to detect cheating in bridge. Dkt. 60 at 11. The claims recite this alleged advance via gathering player information, analyzing it using statistical techniques, and reporting the results of the analysis. '912 patent at claim 1; '005 patent at claim 1. Thus, the crux of the Hammond Patent claims is ***exactly*** what the Federal Circuit has repeatedly found to be abstract. *See, e.g.,*

---

change the § 101 analysis. *Caselas, LLC v. VeriFone, Inc.*, 624 F. Supp. 3d 1328, 1340 (N.D. Ga. 2022), aff'd, No. 2023-1036, 2024 WL 2720092 (Fed. Cir. May 28, 2024) (finding the asserted patents not patent eligible after analyzing one representative claim) (Calvert, J.); *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming district court's use of a representative claim to focus its § 101 analysis because the claims were "substantially similar and linked to the same abstract idea"); *see also PPS Data, LLC v. Jack Henry & Assocs., Inc.*, No. 2:18-cv-00007-JRG, 2019 WL 1317286, at *5 (E.D. Tex. Mar. 21, 2019) (articulating that defendants first bear the burden of demonstrating a claim is representative, which then shifts to the plaintiff to identify a difference material to the § 101 analysis).

*FairWarning IP, LLC v. Iatric Sys., Inc*., 839 F.3d 1089, 1094 (Fed. Cir. 2016) (finding abstract claims "directed to ***collecting*** and ***analyzing*** information to detect misuse and ***notifying*** a user when misuse is detected.") (emphasis added); *SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1167 (Fed. Cir. 2018) ("We have explained that claims focused on 'collecting information, analyzing it, and displaying certain results of the collection and analysis' are directed to an abstract idea.") (citing *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-56 (Fed. Cir. 2016)).

In an attempt to save its patents from abstractness, Hammond analogizes its claims to those found to recite patent eligible subject matter in *Diamond v. Diehr*, 450 U.S. 175 (1981). Hammond argues that the Hammond Patents' claims do not broadly seek to patent a method of mathematical (statistical) analysis, but rather are directed at a specific "technological improvement" previously unknown in the field, like *Diehr*. Dkt. 60 at 10-11. The "technological improvement" previously unknown in *Diehr*, however, was that the mathematical analysis actually ***altered*** a ***physical process***, based upon the claimed calculation steps. *Diehr*, 450 U.S. at 187. Unlike the *Diehr* claims, the Hammond Patents' claims simply communicate information based on the claimed calculations (i.e., alerting an administrator). '912 patent at claim 1; '005 patent at claim 1. The focus of the Hammond claims is thus on a wholly abstract idea—the selection and statistical analysis of information,

followed by reporting the results—not a "physical-realm improvement" like in *Diehr*, which is what saved the *Diehr* claims from abstractness.  *Id.*; *see also SAP Am., Inc.*, 898 F.3d at 1168 (explaining *Diehr*).

The Hammond Patents are akin to those found ineligible in *Parker v. Flook*, a case not cited by Hammond.  437 U.S. 584 (1978).  In *Flook*, the Supreme Court found it was "absolutely clear" that claims reciting the steps of measuring the value of a variable, using an algorithm to calculate an alarm limit, and adjusting the value of the alarm limit based on the value "contain[] no claim of patentable invention." *Id.* at 594.  The Supreme Court further stated that "if a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory."  *Id.* at 595 (citing *In re Richman*, 563 F.2d 1026, 1030 (1977)).  Nearly identical to the *Flook* claims, the Hammond Patents generically recite acquiring data, detecting a deviation in the data, and alerting an administrator of the deviation.  '912 patent at claim 1; '005 patent at claim 1.  And while Hammond makes much of the fact that its claims are limited to the specific field of cheating detection in bridge, *Flook* makes clear that limiting generic steps to a specific purpose cannot render the claims patentable.  *See* Dkt. 60 at 10-11; *Flook*, 437 U.S. at 595; *see also Electric Power Group*, 830 F.3d at 1354 ("Most obviously, limiting the claims to [a] particular technological environment . .

. is, without more, insufficient to transform them into patent-eligible applications of the abstract idea at their core.").

Hammond's citation to other Federal Circuit precedent to claim that the Hammond Patents provide any "technical solution"—*SRI, CardioNet*, and *McRO*— is unavailing.  Dkt. 60 at 11-13.  Unlike *SRI*, the Hammond Patents are not directed to an "improvement to computer capabilities."  *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019).  Instead, as the specification admits, existing cheating-detection techniques for bridge relied on observation of behavioral patterns of bridge games.  '912 patent at 1:25-29; 4:54-5:9; '005 patent at 1:22-31; 4:50-5:8. The improvement, thus, merely utilizes a generic computer-implemented process to make human activities more efficient, not to improve computing.  *SRI*, 930 F.3d at 1303.  In *CardioNet, LLC v. InfoBionic, Inc.*, the court found that nothing in the record suggested that the claims merely computerized pre-existing diagnostic techniques.  955 F.3d 1358, 1370 (Fed. Cir. 2020).  Rather than simply using "computers as tools," the claims were directed to "an improvement in computers." *Id.* at 1371.  Similarly, in *McRO, Inc. v. Bandai Namco Games Am. Inc.*, the claims were directed to a specific technical improvement in computer animation, and there was no evidence that the process recited in the claims was previously done by humans.  837 F.3d 1299, 1314 (Fed. Cir. 2016).  Further, the *McRO* claims were not directed to "improperly monopolize 'the basic tools of scientific and technological

6

work.'" *Id.* (citing *Alice*, 573 U.S. at 216).  In contrast to these cases, the claimed process in the Hammond Patents merely uses a generic computer as a tool to automate the steps of basic statistical analysis.  As the specification describes, cheating detection was solved by human observations of behavioral patterns and data, and the use of statistics to analyze data and detect patterns was well-known. *E.g.*, '912 patent at 11:43-44 ("This field of mathematical probability and statistics is well understood."); 12:29-31 ("Well known statistical methods can be applied to determine the statistical likelihood of a given event . . . ."); 1:25-29; 4:54-5:9; '005 patent at 1:22-31; 4:50-5:8; 11:42-43, 12:29-31.  The claims thus amount to nothing more than automation of pre-existing, conventional activities.  Moreover, instead of claiming a specific technological improvement, the Hammond Patents aim to preempt and monopolize the basic idea of detecting cheating using any analytical, mathematical method.  *Cf. McRO, Inc.*, 837 F.3d at 1316 (". . . claim 1 is limited to a specific process for automatically animating characters using particular information and techniques and does not preempt approaches that use rules of a different structure or different techniques.").  The Hammond Patents also claim no improvement to any computing capabilities—they merely "use computers as tools," which is a "familiar class of claims that focus on . . . abstract ideas[.]" *CardioNet, LLC*, 955 F.3d at 1371.

7

**B.    *Alice* Step 2: The Claims of the Hammond Patents Do Not Recite Any Inventive Concept**

The claims of the Hammond Patents also fail Step 2, as Hammond fails to provide any "inventive concept" legally sufficient to transform the abstract idea into a patent-eligible invention.  It is important to note even genuine factual disputes over conventionality do not foreclose summary judgment unless they prevent the Court from reaching the ultimate ***legal*** conclusion of ineligibility.  They do not always.  A genuine dispute over conventionality will not preclude summary judgment when the Court determines, as a matter of law, that a purportedly unconventional feature fails to add "significantly more" to the abstract idea.  *Alice*, 573 U.S. at 218.  For example, even where doing so was unconventional, "limiting an abstract idea to one field of use" fails to add "significantly more," as a matter of law.  *Bilski v. Kappos*, 561 U.S. 593, 612 (2010); *see also Intellectual Ventures I LLC v. Capital One Bank (USA), N.A.*, 792 F.3d 1363, 1366 (Fed. Cir. 2015) ("Patent eligibility under § 101 is an issue of law. . . .").

"Significantly more" has never meant merely "anything more."  "It was never the object of [the patent] laws to grant a monopoly for every trifling device, every shadow of a shade of an idea."  *Atlantio Works v. Brady*, 107 U.S. 192, 200 (1883).  Indeed, to supply "significantly more" than an abstract idea, even an unconventional feature must "transform the [very] nature" of the claim.  *Alice*, 573 U.S. at 217.  This ensures that "insignificant extra-solution activity" will not confer patent eligibility.

*Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1010 (Fed. Cir. 2018); *see also Bilski*, 561 U.S. at 610-11 ("[T]he prohibition against patenting abstract ideas cannot be circumvented by . . . adding insignificant post-solution activity.") (citing *Diehr*, 450 U.S. at 191-92). It is ultimately for the Court to decide whether a given claimed feature—unconventional or otherwise—is "insignificant" or, instead, adds "significantly more" to the abstract idea.

Here, Hammond erects no hurdles precluding the Court from resolving the ineligibility issue on the pleadings. Hammond relies heavily on the notion that the abstract steps recited in the claims are "fundamentally different" than existing detection methods "conventionally employed" in the game of bridge, which rely on "visual or auditory observation of behavior patterns" to detect potential cheating. Dkt. 60 at 21. But this is simply a restatement of the abstract idea. "[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290-91 (Fed. Cir. 2018) (explaining that at step two, "[a]s a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it"). And, the Federal Circuit has explained, whether the purported invention had never been done before is **irrelevant** to the *Alice* step two analysis. *See, e.g.*, *Caselas, LLC v. Verifone, Inc.*, 2024 U.S. App. LEXIS 12676, *7 (Fed. Cir. May 28, 2024) ("[T]he argument that

the claimed invention is unconventional based on the fact that industry actors did not check charge-back histories until nearly a decade after the '698 patent's date of invention *is of no consequence*.") (emphasis added); *SAP Am., Inc.*, 898 F.3d at 1168-69 ("What is needed is an inventive concept in the non-abstract application realm. . . . [L]imitation of the claims to a particular field of information . . . does not move the claims out of the realm of abstract ideas."). Indeed, patent law does not protect an abstract idea, "no matter how groundbreaking the advance." *SAP Am., Inc.*, 898 F.3d at 1170.

In faulting EDGAR for focusing "solely on whether the recited computing components, themselves, provide an inventive step," Dkt. 60 at 22, Hammond fundamentally misunderstands that the law specifically requires consideration of what is left, ***aside from the abstract idea***, to determine whether an inventive concept exists at all. Fatal to its position, Hammond fails to argue that ***any*** other, non-abstract feature of the claimed invention, alone, or in combination, is not well-understood, routine, or conventional. *See id.* at 22-24. Specifically, Hammond does not dispute that the remaining computer elements recited in the claims—a "non-transitory, computer-readable medium containing instructions" with a "processor that executes the instructions" and a "website"—are generic and used for their conventional purposes. *See id.*; *see also* '912 patent at 22:52-23:20; '005 patent at 22:57-23:15. And the Federal Circuit has long held the "recitation of generic

10

computer limitations does not make an otherwise ineligible claim patent-eligible."
*DDR Holdings, LLC v. Hotels.com, LP,* 773 F.3d 1245, 1256 (Fed. Cir. 2014)
(citing *Alice*, 573 U.S. at 223-24); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of
Canada (U.S.)*, 687 F.3d 1266, 1279-80 (Fed. Cir. 2012) (holding that claims which
included mathematical computations performed by a computer did not supply an
inventive concept because "without the computer limitations nothing remains in the
claims but the abstract idea of . . . performing calculations and manipulating the
results"). These components are present in the claims only because computers are
used as the tool to perform the statistical analysis. Hammond's claims thus amount
to only "application of an abstract idea using conventional and well-understood
techniques," and cannot be transformed into patent-eligible subject matter.
*Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 705 (Fed. Cir. 2023) (finding the
claims patent ineligible where they were nothing more than an "application of the
abstract idea using common computer components").

Hammond summarily dismisses *Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) without argument (Dkt. 60 at 23), which specifically
held that "limiting the claims to a particular technological environment" is
"insufficient to transform them into patent-eligible applications of the abstract idea
at their core." *Id.* at 1354. Hammond contends that the "inventive concept" recited
in the claims is that the generic steps of "determining performance values,"

11

"detecting . . . a deviation," and "alerting an administrative user," are fundamentally different from the activities **conventionally employed in the field** of cheating detection in bridge. Dkt. 60 at 1, 23. The patents themselves admit that the "field of mathematical probability and statistics is well understood" and "[w]ell known statistical methods can be applied to determine the statistical likelihood" of cheating. '912 patent at 11:43-44, 12:29-31; '005 patent at 11:42-43, 12:29-31. Hammond's argument is simply that this statistical method is inventive because it had never been used in the field of cheating detection in bridge. This is exactly the kind of argument that *Electric Power Group* rejected. 830 F.3d at 1354 (finding claims patent ineligible where they "purport to make [] a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions").

The case on which Hammond chooses to rely, *Rapid Litigation Mgmt. Ltd. v. CellzDirect Inc.*, 827 F.3d 1042 (Fed. Cir. 2016), has no relevance to the § 101 analysis in this case. In *CellzDirect*, the Federal Circuit found the claims at issue to be directed to "a new and useful laboratory technique for preserving hepatocytes." *Id.* at 1048. In finding that the claims recited an inventive concept, the Court noted that "[b]ecause the claimed process involves both multiple freeze-thaw cycles and pooling cells from various donors, it results in a preparation that is both new and vastly more useful for research than hepatocyte preparations made by conventional

methods." *Id.* at 1049. There was evidence that the prior art taught away from the multiple freeze cycles in the field, and the claimed process was thus far from routine or conventional. *Id.* at 1051. In Hammond's case, cheating has been a known and solved problem in bridge ('912 patent at 1:25-32, 1:58-60; '005 patent at 1:22-29, 1:55-57), and the claimed method, implemented on a generic computer, does not recite anything inventive rendering the claims patent eligible. The specificity of the *CellzDirect* implementation in no way resembles the functional language in the claims of the Hammond Patents.

## III.  PATENT INELIGIBILITY ANALYSIS FOCUSES ON THE CLAIMS AND CAN BE RESOLVED AT THE PLEADING STAGE

Hammond does not identify any issue that would preclude the Court from deciding this threshold inquiry now. As a last resort, Hammond argues that the allegations set forth in its counterclaim and the Hammond Patents' shared specification raises a "factual issue" as to whether the claims were conventional, well understood, or routine at the time of the invention. Dkt. 60 at 21. But general statements that he was the first to use non-video detectable methods to detect cheating do not raise any question of fact that would make it inappropriate to grant EDGAR's motion at this stage. *See BSG Tech*, 899 F.3d at 1290 (a claim's "use of the ineligible concept to which it is directed cannot supply the inventive concept"). Hammond, does not, and cannot allege that it was unconventional to use computers to gather data, conduct statistical analysis on the data, and alert individuals about the

results. He only alleges that he was the first to do so to detect cheating in the game of bridge. Dkt. 60 at 21. Even if true, this is not an inventive concept. *Electric Power Group*, 830 F.3d at 1354 ("[L]imiting the claims to a particular technological environment" is insufficient.); *see also Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6). . . . A statement that a feature 'improves the functioning and operations of the computer' is, by itself, conclusory.").

The § 101 analysis is focused on the claims. Hammond's claims all recite basic steps of identifying cheating using statistical analysis of data against predetermined values, and Hammond has not identified a single claim construction issue that the Court need resolve on a full record. Where, as here, the Court can have a "full understanding of the basic character of the claimed subject matter" on the pleadings, the threshold question of patent eligibility may properly be resolved at this stage. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (holding "it was appropriate for the district court to determine that the [asserted] patents were ineligible under § 101 at the motion to dismiss stage" where the patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101

analysis"). Indeed, the Federal Court recently affirmed this Court's decision to find patents ineligible at the motion to dismiss stage. *Caselas*, 2024 U.S. App. LEXIS 12676, at \*7.

## IV.    CONCLUSION

For the reasons above and those set forth in its opening brief, EDGAR respectfully requests that the Court dismiss Hammond's counterclaims on the '912 patent with prejudice and adjudicate on the pleadings the invalidity of the Hammond Patents, as both patents fail to claim patentable subject matter as required by the Patent Act, 35 U.S.C. § 101.

Dated: July 1, 2024                      Respectfully submitted,

/s/*Noah C. Graubart*
Noah C. Graubart
Katherine H. Reardon (*Pro Hac*)
**FISH & RICHARDSON P.C.**
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Tel: (404) 892-5005

Louis Fogel (*Pro Hac*)
fogel@fr.com
Shaun M. Van Horn (*Pro Hac*)
Vanhorn@fr.com
**FISH & RICHARDSON P.C.**
60th South 6th Street Suite 3200
Minneapolis, MN 55402
(612) 335-5070

**ATTORNEYS FOR PLAINTIFF
THE EDGAR ASSOCIATION**

15

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that the foregoing document has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

*/s/Noah C. Graubart*
Noah C. Graubart

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused to be served the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel or parties of record on the service list.

Date: July 1, 2024

*/s/Noah C. Graubart*
Noah C. Graubart